Filed 10/29/13  P. v. Zavala CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063004 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN304721) |
| TOMAS ZAVALA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. Mills, Judge.  Affirmed.

Arielle Bases for the Defendant and Appellant, under appointment by the Court of Appeal.

Kamala D. Harris, Attorney General, Dane R. Gillette and Julie L. Garland, Assistant Attorneys General, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General for the Plaintiff and Respondent.

A jury convicted Tomas Zavala of corporal injury on a cohabitant (Pen. Code,[1] § 273.5, subd. (a)) and vandalism (§ 594, subds. (a),(b)(2)(A)). In bifurcated proceedings, the court found true an allegation Zavala had served one prior prison term within the meaning of section 667.5, subdivision (b). The court sentenced him to a total of five years in prison.

Zavala contends the court (1) erroneously refused to instruct the jury regarding the defense of others; and (2) abused its discretion under Evidence Code section 352 by admitting evidence that he committed prior acts of domestic violence against his former cohabitant, M.R.; further, that evidence rendered his trial fundamentally unfair and deprived him of due process. We affirm the judgment.

## FACTUAL BACKGROUND

*Prosecution Case*

M.R. and Zavala have two children. On April 18, 2012, she took them to his mother's house, where M.R. saw Zavala with the son of his then girlfriend. M.R. became upset and argued with Zavala. He grabbed her neck and slammed her against the kitchen wall. He took M.R.'s purse, cell phone and ATM card and refused to return them to her. During the argument, Zavala threw M.R. on a bed, got on top of her and choked her. He slapped her face and hit her with his fist, telling her she had ruined his life. He also pointed a gun at her head. Afterwards, Zavala left in his mother's vehicle. M.R. put her children in her vehicle and followed him. After she lost sight of him, she returned to his

---

[1] All statutory references are to the Penal Code unless otherwise stated.

mother's home, where he also eventually returned. M.R. was holding the door of Zavala's vehicle while she again asked him for her belongings. He refused to give them to her and drove off, causing her to fall and injure her shoulder and scrape her knees. Zavala took the key to M.R.'s vehicle out of the ignition. Afterwards, he slashed one of her tires with a knife. M.R. telephoned her father for help and he, in turn, contacted police.

Police responded to the neighborhood based on reports Zavala was running with a knife. Police saw him enter a stranger's house, and detained Zavala as he was leaving the house. Police found a knife near where they had seen Zavala drop an object. When police arrested Zavala, he said without prompting something to the effect of, "I did it. I admit I popped the tire with a knife. I told her to stop following me, leave me alone, she wouldn't."

At trial, over Zavala's objections, the court admitted into evidence Zavala's uncharged prior domestic violence incidents against M.R., including one in which Zavala ordered his pit bull to attack M.R. It bit her arm, and she required plastic surgery. Zavala went to the hospital, took M.R.'s phone, and called one of her contacts. That person told hospital authorities that a restraining order was in place banning Zavala from contacting M.R.

M.R. testified regarding Zavala's other uncharged domestic violence incidents: Almost daily he used to hit, slap, and choke her in front of their children. He threatened to kill her. She had obtained a restraining order against him because he took money from her bank account and threatened to take their children from her and burn her house down. Zavala punched and broke a window to her house because M.R. refused to let him inside.

3

For the same reason, he put a knife through a metal screen door at her house. During other arguments with M.R., Zavala punched holes through the walls in the children's room and in a bedroom closet.

*Defense Case*

Zavala's mother and his 13-year old niece testified regarding the April 18, 2012 incident as follows: After Zavala and M.R. had argued, Zavala drove away, followed by M.R. They both returned, and Zavala said he was scared because M.R. had followed him. Zavala again drove off and M.R. followed him with her children in the vehicle. She drove fast, running a red light. The niece and Zavala's mother later saw Zavala slash M.R.'s tire. He said that M.R. had endangered their children by following him. Zavala's niece and mother testified M.R. had said she got her injuries that day from jumping on Zavala's truck and falling off while trying to stop him and talk to him.

DISCUSSION

I.

Zavala contends the trial court erroneously declined his request to instruct the jury with CALCRIM No. 3470 regarding defense of others. He argues that his mother and niece presented sufficient circumstantial evidence that he slashed M.R.'s tire in order to prevent M.R. from endangering their children's lives through her reckless driving.

CALCRIM No. 3470 states that a defendant acts in a lawful manner in defense of another if the defendant reasonably believes he or someone else was in imminent danger of suffering bodily injury; the defendant reasonably believes that the immediate use of force was necessary to defend against that danger; and the defendant uses no more force

4

than is reasonably necessary to defend against that danger.  Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be.  The instruction continues:  "When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed.  If the defendant's beliefs were reasonable, the danger does not need to have actually existed."  (CALCRIM No. 3470.)

The trial court must instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.  The obligation also applies, with reservations not applicable here, to instruction on defenses when they are supported by substantial evidence.  (*People v. Barton* (1995) 12 Cal.4th 186, 195.)  In this context substantial evidence means evidence of a defense, which, if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt.  (*People v. Salas* (2006) 37 Cal.4th 967, 982-983.)  We will not set aside a judgment on the basis of instructional error unless, after an examination of the entire record, we conclude the error has resulted in a miscarriage of justice.  (Cal. Const., art. VI, § 13.)  A miscarriage of justice occurs only when it is reasonably probable that the jury would have reached a result more favorable to the appellant absent the error.  (*People v. Wharton* (1991) 53 Cal.3d 522, 571-572, fn. 10; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Applying the above principles, we reject Zavala's claim of prejudice.  Assuming without deciding that the testimony of Zavala's mother and niece provided sufficient

5

basis for the court to instruct regarding defense of others, we conclude Zavala suffered no prejudice and therefore no reversal is necessary. Based on the evidence, it was not reasonable to believe Zavala feared M.R. for any reason, including that she had endangered the children. In fact, a short while before Zavala slashed M.R.'s tire, he had choked, beaten and threatened M.R. with a gun. He also had taken her phone and other belongings. M.R. testified he grabbed the keys to her vehicle before slashing her tire. By taking her keys, Zavala impeded her from driving with the children, and therefore eliminated any imminent harm to them. Finally, upon his arrest, Zavala willingly admitted to police that he had slashed the tire; but at that time he never claimed he had sought to defend his children. Considering all the circumstances, Zavala could have avoided M.R.'s purported reckless driving by simply returning her belongings, and a jury would have reasonably so concluded.

In light of our conclusion that a jury would not find Zavala's act of vandalism objectively reasonable under the circumstances of this case, the court's decision to decline instruction with CALCRIM No. 3470 was harmless beyond a reasonable doubt under the more stringent standard set forth in *Chapman v. California* (1967) 386 US. 18, 24.

## II.

### A.

Zavala contends the court erred by admitting testimony about the pit bull incident because such testimony was more prejudicial than probative under Evidence Code section 352.

6

At trial, defense counsel moved in limine to exclude testimony regarding the pit bull incident, arguing it was not similar to his other prior uncharged acts. But the court denied the motion, saying: "No, I'm going to let it in. It's all the same if the jury believes it. It's aggressive, violent, physical contact and conduct, intent by the defendant against the female. For whatever reason it occurred. [¶] I am concerned about keeping out what I need to keep out but we'll work on it."

"Evidence Code section 1109 allows the introduction of evidence of [a] defendant's commission of prior acts of domestic violence in a criminal action charging [the] defendant with an offense involving domestic violence." (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.) Specifically, with exceptions not applicable here, subdivision (a)(1) of Evidence Code section 1109 provides in part: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code s]ection 1101 if the evidence is not inadmissible pursuant to [Evidence Code s]ection 352." (See also *People v. Johnson* (2000) 77 Cal.App.4th 410, 417.)

Under Evidence Code section 352, the trial court has discretion to exclude evidence of prior acts of domestic violence if its probative value is substantially outweighed by the probability its admission would necessitate undue consumption of time or create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, §§ 1109, subd. (a)(1), 352; *People v. Cudjo* (1993) 6 Cal.4th 585, 609.)

7

"The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) Thus, in cases involving the proffering of evidence of prior acts of domestic violence under Evidence Code section 1109, we decide whether there is a likelihood the evidence will so inflame the jurors that they base their verdict not on the evidence regarding the charged offenses, but on their emotional response to the defendant's commission of the uncharged prior acts or crimes.

A trial court's decision to admit evidence of prior acts of domestic violence as propensity evidence under Evidence Code sections 1109 and 352 is reviewed for abuse of discretion. (*People v. Poplar*, *supra*, 70 Cal.App.4th at p. 1138.) "[T]he court's exercise of discretion will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.)

Zavala has failed to meet his burden on appeal of establishing that in permitting M.R. to testify about his uncharged acts of physical domestic violence the court abused its discretion under Evidence Code section 352. Although M.R. suffered more injury

during the pit bull incident, the facts surrounding that incident were not more inflammatory than those involving the charged offense in the present case, in which Zavala choked M.R., slammed her against a wall, threw her on the bed, and threatened her with a gun.  Further, the jury would not be confused by the two incidents.  Finally, the proffered evidence was probative to show Zavala had a propensity to use physical violence against a cohabitant on the date he committed corporal injury on M.R.

B.

Zavala also contends that the court's application of Evidence Code section 1109 to admit M.R.'s testimony regarding prior acts of domestic violence rendered his trial fundamentally unfair, thereby depriving him of his federal constitutional right to due process of law and a fair trial.  He adds that permitting evidence of prior incidents to show propensity dilutes the beyond a reasonable doubt standard of proof.

Zavala acknowledges that in *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), the California Supreme Court rejected a similar attack on analogous provisions of Evidence Code section 1108, subdivision (a), which permit evidence of prior sex offenses to be admitted when a defendant is charged with a sexual offense.  Zavala states he raises the issue here "to preserve the question for federal exhaustion purposes."

The *Falsetta* court upheld Evidence Code section 1108 against a due process challenge in part because that statute allows trial courts to exclude evidence that is unduly prejudicial under Evidence Code section 352.  (*Falsetta*, *supra*, 21 Cal.4th at pp. 917-918.)  This discretion given to trial courts under Evidence Code section 352 satisfies the requirements of due process.  (*Falsetta*, at p. 918.)  We are bound by the Supreme Court's

9

decision in *Falsetta*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Evidence Code sections 1108 and 1109 are virtually identical, except that the former addresses the admissibility of evidence of sexual offenses while the latter addresses evidence of domestic violence.[2] Although the California Supreme Court has not addressed the issue, the intermediate appellate courts have consistently applied the reasoning in *Falsetta* to reject facial federal and state constitutional due process challenges regarding the admission of propensity evidence under Evidence Code section 1109. (See *People v. Cabrera* (2007) 152 Cal.App.4th 695, 703-704; *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1120; see also *People v. Williams* (2008) 159 Cal.App.4th 141, 147; *People v. Price* (2004) 120 Cal.App.4th 224, 240; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1096; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1309-1310; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1331-1334; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1026-1027; *People v. Johnson*, *supra*, 77 Cal.App.4th at p. 417.) We agree with the reasoning and results in these cases and reaffirm our holding in *Cabrera*, *supra*, 152 Cal.App.4th 695. As the *Jennings* court observed: "[T]he

---

2       Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code s]ection 352." Evidence Code section 1109, subdivision (a)(1) provides in part: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code s]ection 1101 if the evidence is not inadmissible pursuant to [Evidence Code s]ection 352."

constitutionality of [Evidence Code] section 1109 under the due process clauses of the federal and state constitutions has now been settled." (*Jennings*, at p. 1310.)

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

AARON, J.

11